Commonwealth *v.* Carbonetto, Appellant.

Argued May 1, 1973. Before EAGEN, O'BRIEN, ROB-ERTS, POMEROY, NIX and MANDERINO, JJ.

*Justin D. Jirolanio,* for appellant.

*Charles H. Spaziani,* District Attorney, for Common-wealth, appellee.

OPINION BY MR. JUSTICE POMEROY, January 24, 1974:

A Northampton County jury found Rosalia Car-bonetto guilty of murder in the second degree. Motions in arrest of judgment and for a new trial were denied, and a sentence of imprisonment at the State Correc-

tional Institution at Muncy for not more than ten years was imposed.[1]  This appeal followed.  We affirm.

Appellant challenges the sufficiency of the evidence to sustain her conviction.  We have remarked many times that "the test of sufficiency of evidence is whether, accepting as true all the evidence, together with all reasonable inferences therefrom, upon which the jury could properly have based its verdict, such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt." *Commonwealth v. Clark*, 454 Pa. 329, 331, 311 A. 2d 910 (1973).

In the case at bar the evidence discloses that Rosalia Carbonetto, the appellant, and Jack Lidestri, the deceased, had been friends for several years.  The Lidestri and Carbonetto families were frequent visitors at each other's houses.  Mr. Lidestri sometimes dropped by the Carbonetto home during the evening to work around the house, both when Mr. Carbonetto was home and when he was at work.  On June 9, 1970, the Carbonettos agreed to look after the Lidestri children for a few hours.  Mr. Lidestri came to the Carbonetto house to pick up his children at about 6:30 that evening.  As they were leaving, Jack Lidestri's ten-year old son, Ralph, heard Mrs. Carbonetto say to his father "to come back, or 'I'll see you later', or something like that".[2]

---

[1] Sentence was imposed under the so-called "New Muncy Act", Act of July 16, 1968, P. L. 349, No. 171, §1, 61 P.S. §566. Bail in the amount of $25,000 had been set before trial, and was continued after sentence pending appeal. See Rule 4004(b) of the Pennsylvania Rules of Criminal Procedure (the rule in effect at the time of the trial in this case has since been superseded by Rule 4010B(2), adopted July 23, 1973).

[2] There was conflicting testimony as to who said what to whom on Mr. Lidestri's departure from the Carbonetto residence. Of course, the jury was free to believe Ralph Lidestri, and disregard any testimony to the contrary.

Lidestri returned to the Carbonetto house later that evening. Mr. Carbonetto was working a night shift, and Mrs. Carbonetto was alone in the house with her two children. What then occurred is supplied by her oral statement made to Anthony Vannicola, a Pennsylvania State Police investigator who interviewed Mrs. Carbonetto just after the events in question had transpired. As testified to by the officer as a Commonwealth witness at trial: "She stated at approximately 9:45 Jack Lidestri—correct name Giacinto Lidestri— came and knocked at the front door and she left (sic) him in, and he went to the chair in the living room and he sat down, and he told her that he didn't love his wife, that he loved her, and she responded that he can't be in love with her because she was a married woman and that she didn't want to go with him. As she was standing in the center of the living room he got up from the chair and put his two arms around her and tried to kiss her. She pushed him away. He came back and went down to her private parts and tried to take off her pants. She told him to stop, that she had to go into the bedroom to get something to fix herself so she wouldn't have any children. She then went into the bedroom and she got the pistol, and she said Mr. Lidestri followed her into the bedroom and she began firing, and she said one of the bullets hit him and he staggered like a drunk from the bedroom, down the hallway, and into the living room, where he fell, and was lying on the floor near the entrance to the living room."

Mrs. Carbonetto also told Trooper Vannicola, as he testified, that Lidestri had made similar sexual advances some weeks earlier. She admitted purchasing the gun three days before the fatal shooting. When her husband noticed her buying the gun, she had explained that she wanted it for protection when she was alone at night. She did not mention to him her earlier difficulty with Lidestri.

The Commonwealth also introduced an oral statement made by Mrs. Carbonetto to Assistant District Attorney John Gallagher on the night of the shooting. The defendant had been admitted to Easton Hospital, where she was briefly interviewed by Mr. Gallagher. He asked her whether she shot Mr. Lidestri because she was afraid of him, or because she was mad at him, to which she replied, "I shot him because I was mad at him."

Appellant has at no time denied that she shot and killed Lidestri; indeed, she herself called the police after the occurrence. Her position at trial was that the shooting was excusable as an act of self-defense. Self-defense is an affirmative defense, which the defendant must prove by a fair preponderance of the evidence. *Commonwealth v. Winebrenner,* 439 Pa. 73, 265 A. 2d 108 (1970). Three conditions must be satisfied in order to invoke the defense successfully: (1) the slayer must have been free from fault in provoking or continuing the difficulty which resulted in the killing; (2) he must have reasonably believed that he was in imminent danger of death, great bodily harm, or some felony, and that there was a necessity to kill in order to save himself therefrom; and (3) he must not have violated any duty to retreat or avoid the danger. *Commonwealth v. Johnston,* 438 Pa. 485, 263 A. 2d 376 (1970). Whether the defendant has carried his burden of proving self-defense is a question for the finder of fact. *Commonwealth v. Edwards,* 448 Pa. 79, 292 A. 2d 361 (1972) ; *Commonwealth v. Commander,* 436 Pa. 532, 260 A. 2d 773 (1970).

Mrs. Carbonetto testified at trial that, after the scene in the living room, described through Officer Vannicola, Lidestri pursued her into the bedroom, grabbed her by the neck, and threatened to kill her if she did not accede to his wishes. The jury was free to disbelieve this testimony, and our review of the record satisfies us

that it had ample reason for doing so. Mrs. Carbonetto never mentioned Lidestri's threats or his attempt to choke her in the bedroom in her statements to the police on the night of the homicide; the police found no signs of a struggle in the bedroom, nor did they observe any marks or bruises on Mrs. Carbonetto's neck[3] Her statement to Assistant District Attorney Gallagher tended to undercut her testimony on the stand, as did the circumstances surrounding her purchase of the gun, and undisputed circumstantial evidence that one shot was fired in the living room.

Appellant now argues that, apart from her own testimony, the Commonwealth's evidence establishes excusable homicide as a matter of law. We agree with the court below, however, that this argument is untenable. As the lower court noted in its thorough opinion: "Looking first to defendant's oral statement to Trooper Vannicola, it reveals that defendant was able to stop Lidestri's advances towards her without sustaining great bodily harm and without being subjected to threats of great bodily harm. Moreover, her statement admits that she was able to extricate herself from the immediate situation by telling Lidestri, 'that she had to go into the bedroom to get something to fix herself so she wouldn't have any children'. Under the version Rosalia Carbonetto recounted to Trooper Vannicola, she got the pistol and began firing at Lidestri who had followed after her. She gave no reason why she began firing at that moment." Considering appellant's statement against the background of her later statement to Mr. Gallagher and the other evidence introduced by

---

[3] Mrs. Carbonetto was wearing an open-necked blouse which exposed her throat to view. An examination at Easton Hospital on the night of the homicide showed no signs of an attempted choking, and revealed only a bruise and a scratch on Mrs. Carbonetto's upper left thigh, and a small scratch on the little finger of her right hand. She had earlier explained to the police that she had cut her finger on the gun.

the Commonwealth, the jury could and did find that Mrs. Carbonetto did not reasonably believe it was necessary to shoot Mr. Lidestri in order to protect herself from murder, great bodily harm, or some felony. The issue of self-defense was properly left to the finder of fact.

*Commonwealth v. Edwards,* 448 Pa. 79, 292 A. 2d 361 (1972), is similar to the instant case in several pertinent respects. Edwards was attacked in his own home by an intruder whom he killed with a pistol. Affirming his conviction, we said: "Despite appellant's lack of culpability in provoking the fight and his right to defend himself without retreating once involved in it, the trial judge found that the third condition for self defense, i.e., that no reasonably safe means of defense other than killing his assailant existed, had not been met. He found that there was a reasonable opportunity during the pause in the fight to reveal the gun to the deceased and warn him away; hence the force employed by appellant could not be considered reasonable under the circumstances. Whether the burden of showing necessity to kill in order to avoid imminent danger of death to oneself has been met is strictly a question for the fact finder to decide. . . ." 448 Pa. at 85.

The facts in *Edwards,* like those in the instant case, stand in sharp contrast to the facts in *Commonwealth v. Johnston,* 438 Pa. 485, 263 A. 2d 376 (1970), where we held that self-defense was established by the Commonwealth's evidence as a matter of law. There, the deceased continued to advance toward the defendant with knife drawn, despite a verbal warning and a warning shot fired at the victim's feet. The pivotal issue in *Johnston* was the purely legal question whether the defendant had a duty to retreat from his business premises.

Appellant cites us to *Commonwealth v. Jackson,* 362 Pa. 469, 66 A. 2d 841 (1949), where the Common-

wealth's case consisted solely of two statements given by the defendant to the police. The Court held that the statements, if believed, showed self-defense as a matter of law, and that if they were not believed, "there is nothing in the case but uncertain suspicion," insufficient to sustain a verdict. 362 Pa. at 474. Unlike the situation in *Jackson*, the verdict here is sustainable even if Mrs. Carbonetto's statement to the police is accepted on its face by the fact finder. Also unlike *Jackson*, this is not a case where, without appellant's statements, the evidence was not sufficient to sustain the verdict. We have sketched above the extensive collateral evidence supporting the Commonwealth's case.

Appellant also argues that the failure of the trial judge to charge that the jury had to determine the voluntariness of Mrs. Carbonetto's statements necessitates a new trial. This omission was not objected to when the jury was charged, nor was the matter raised on post-trial motions before the court en banc. As we have said many times, an alleged error in jury instructions will not be considered for the first time on appeal. *Commonwealth v. Dancer*, 452 Pa. 221, 305 A. 2d 364 (1973); *Commonwealth v. Agie*, 449 Pa. 187, 296 A. 2d 741 (1972); *Commonwealth v. Myers*, 439 Pa. 381, 266 A. 2d 756 (1970).

Judgment of sentence affirmed.

Mr. Chief Justice JONES took no part in the consideration or decision of this case.