331 A.2d 462

COMMONWEALTH of Pennsylvania

v.

Garnie SEGERS, Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 21, 1974.

Decided Jan. 27, 1975.

Alexander Hemphill, Philadelphia, for appellant.

Arlen Specter, Dist. Atty., Richard A. Sprague, First Asst. Dist. Atty.; David Richman, Asst. Dist. Atty., Chief, Appeals Div., F. Emmett Fitzpatrick, Dist. Atty., Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

The appellant, Garnie Segers, was convicted by a jury of murder in the first degree and, after denial of post-trial motions, was sentenced to life imprisonment. This direct appeal followed.

The evidence introduced by the Commonwealth at trial was virtually uncontradicted. It established that on the night of December 19, 1971, the appellant shot and killed one Leonard Wilcox as Wilcox was riding as a guest passenger in an automobile driven by one Robert Fuller on Lancaster Avenue in the City of Philadelphia. Also in the car was Segers' common-law wife, Margaret Lane. Miss Lane and Fuller both testified that immediately prior to the shooting they had observed Segers following them in his own car as they drove through Philadelphia. Segers eventually pulled alongside the Fuller car, yelled "You all can't come back to Jersey no more," aimed a shotgun out of the window of his car, and fired. Wilcox was fatally wounded, and Margaret Lane slightly so. Both automobiles stopped after the shooting. Segers alighted from his car and exclaimed, "I told you I was going to get you." The shooting apparently was the result of Segers' belief that his common-law wife and Wilcox were lovers. Some three weeks previously Miss Lane had left Segers following an argument.

After the shooting appellant fled, first to his father's home in Vineland, New Jersey, then to Georgia, where he was ultimately arrested on July 4, 1972. Segers waived

extradition and was returned to Philadelphia. During subsequent interrogation by the police he gave a statement, which was introduced into evidence, in which he admitted shooting Wilcox, but claimed that the shooting was an accident and that he had not intended to kill him.

Appellant asserts six assignments of error, each of which was considered and rejected by the trial court on post-trial motions. We affirm.

(1) The first contention is that bail was fixed at an unreasonably high figure ($45,000), thus causing Segers to remain incarcerated and severely hampering him in the preparation of his defense. Principal reliance is placed upon our decision in *Commonwealth v. Truesdale,* 449 Pa. 325, 296 A.2d 829 (1972), in which we held [1] that there are no longer any "capital" offenses in this state, and that all offenses, including murder which may rise to murder in the first degree, are bailable.

In *Truesdale,* however, we did not abandon the well-settled rule that "the right to release before trial is conditioned upon the accused giving adequate assurance he or she will appear for trial." 449 Pa. at 337, 296 A. 2d at 835. In fact, we emphasized that if the lower court reasonably concludes that a defendant may not appear for trial no matter how high the bail is set, it may deny bail altogether. *Id.* In a footnote, we stated some of the situations in which bail could properly be denied:

"For example, if on a past offense the accused had jumped bail, it would seem that the judge could properly deny bail, or *if after committing a murder the accused had fled the Commonwealth* and was returned to

---

1. This holding was in light of the decision of the Supreme Court of the United States in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) holding that the death penalty as applied in the State of Georgia was unconstitutional. *See also, Scoleri v. Pennsylvania,* 408 U.S. 934, 92 S.Ct. 2852, 33 L.Ed.2d 747 (1972); *Stewart v. Massachusetts,* 408 U.S. 845, 92 S.Ct. 2845, 33 L.Ed.2d 744 (1972); *Commonwealth v. Bradley,* 449 Pa. 19, 295 A.2d 842 (1972).

the authorities of the Commonwealth under a fugitive warrant either by the police of another state or by federal officials bail could properly be denied." (emphasis added) *Id.* 449 Pa. at 338 n. 16, 296 A.2d at 836. In light of Segers' flight from the Commonwealth following the slaying of Wilcox, bail could have been properly denied him; he cannot, therefore, complain when bail was actually set, albeit at a comparatively high figure. We cannot say that this figure was excessive under the circumstances.

(2) Appellant twice petitioned before trial for a change of court-appointed counsel, and asserts that denial of the petitions was error. In his first petition appellant claimed that because of a "conflict of interest" between himself and his lawyer, Mr. Hemphill, lawyer-client rapport was impossible; that Mr. Hemphill had been negligent in not filing, until urged to do so by appellant, a pre-trial motion to suppress certain of his statements and an application for bail. When his second petition was filed, just prior to the case going to trial, Segers was sworn and took the stand to reiterate that his reason for requesting a change of counsel was due to a "conflict of interest," adding that counsel had not obtained two witnesses for his defense. Counsel informed the Court that the two witnesses in question had in fact been subpoenaed.

██ ██ Whether a petition for change of court-appointed counsel should be granted is within the sound discretion of the trial court. As we said in the case of *Commonwealth v. Johnson,* 428 Pa. 210, 236 A.2d 805 (1968), "it [has] been firmly held that an indigent, while entitled to free counsel, is *not* entitled to free counsel of his choice." 428 Pa. at 213, 236 A.2d at 807. *See also, United States ex rel. Carey v. Rundle,* 409 F.2d 1210, 1215 (3d Cir. 1969), cert. denied, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970) ("although the right to counsel is absolute, there is no absolute right to a partic-

ular counsel.") We recognized in *Johnson* that a defendant might reject court-appointed counsel, but said he might do so only " 'for good cause shown.' " [2] *Id.* It appears that Segers' dissatisfaction with his lawyer stemmed primarily from his general unhappiness with court-appointed attorneys. For example, at the suppression hearing, he stated that "[t]o me a public defender is not a lawyer." In *Johnson, supra,* we specifically rejected such a "broad based attack on our entire defender system" as being "good cause" for the granting of a defendant's petition for change of counsel. 428 Pa. at 213, 236 A.2d at 807. We hold, accordingly, that the court below did not abuse its discretion in denying appellant's petitions for change of counsel.

(3) Appellant's next contention is that the trial court unduly restricted him in the questions he was permitted to ask during the course of the voir dire. The thrust of this argument is that he was unjustifiably hampered in his inquiry as to racial bias or prejudice of the veniremen.

Defense counsel apparently tried to establish that certain white veniremen entertained racial prejudice by showing that they were moving from one neighborhood to another in order to avoid living in areas which were being integrated by blacks. Counsel was prohibited at least twice from asking why veniremen moved to or from certain neighborhoods, and the trial court declined to take judicial notice that the changes of residence were racially motivated. On the one occasion, however, that defense counsel directly questioned a venireman on the issue of racial prejudice, that question was permitted by the court.

2. Rule 318, Pa.R.Cr.P., 19 P.S. Appendix, effective September 18, 1973, now provides in pertinent part: "An application for change of counsel by a defendant to whom counsel has been assigned, shall not be granted except for *substantial reasons.*" (emphasis added).

■ It is true, of course, that in a proper case defendants have the right to inquire into any possible racial prejudice that a venireman may have, *see e. g.*, *Aldridge v. U. S.*, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931), but that right is not boundless. As the Supreme Court of the United States stated in *Ham v. South Carolina*, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973): "the trial judge was not required to put the question [as to racial bias] in any particular form, or to ask any particular number of questions on the subject, simply because requested to do so by petitioner." 409 U.S. at 527, 93 S.Ct. at 850, 35 L.Ed.2d at 50.

■■ Recognizing the right of a party to inquire into bias or any other subject which bears on the impartiality of a prospective juror, the scope to be allowed the examination on voir dire nevertheless rests in the sound discretion of the trial judge. *Commonwealth v. Johnson*, 452 Pa. 130, 305 A.2d 5 (1973); *Commonwealth v. Biebighouser*, 450 Pa. 336, 300 A.2d 70 (1973); *Commonwealth v. Lopinson*, 427 Pa. 284, 234 A.2d 552 (1967); *Commonwealth v. McGrew*, 375 Pa. 518, 100 A.2d 467 (1953). Here it was within the trial court's discretion whether to accept or reject counsel's theory that racial prejudice could be established simply by a venireman's pattern of change of his residence. We are satisfied that the trial court was within its discretion in refusing to permit further questioning based upon that theory. As stated above, appellant was permitted to question veniremen *directly* on the subject of racial prejudice. Thus, we cannot say that appellant was denied his right to a fair and impartial jury.

■ (4) The next alleged error claimed by the appellant concerns the failure of the trial judge to allow appellant additional peremptory challenges once the twenty challenges provided for by statute had been exhausted. This claim is plainly without merit. The Act of March 6, 1901, P.L. 16, § 1, as amended, 19 P.S. § 811, provides

that in cases such as this both the prosecution and the defendant are entitled to twenty peremptory challenges. *See also* Rule 1126, Pa.R.Cr.P., 19 P.S. Appendix (Supp. 1974–75). Since the number of challenges is prescribed by statute, the trial court could do no other than to deny appellant's request; it had no discretion in the matter. *Funk v. Ely*, 45 Pa. 444 (1863).

■ (5) Appellant's final contention is that the verdict was against the weight of the evidence. Our scope of review in determining such a claim in murder cases has been stated time and time again. Thus in *Commonwealth v. Carbonetto*, 455 Pa. 93, 314 A.2d 304 (1974), we said:

> " 'the test of sufficiency of evidence is whether, accepting as true all the evidence, together with all reasonable inferences therefrom, upon which the jury could properly have based its verdict, such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt.' " 455 Pa. at 95, 314 A.2d at 305.

*See also, Commonwealth v. Clark*, 454 Pa. 329, 311 A.2d 910 (1973); *Commonwealth v. Oates*, 448 Pa. 486, 295 A.2d 337 (1972). We are to consider the evidence in the light most favorable to the Commonwealth as the verdict winner. *Commonwealth v. Rife*, 454 Pa. 506, 509, 312 A.2d 406 (1973); *Commonwealth v. Rankin*, 441 Pa. 401, 404, 272 A.2d 886 (1971).

■ Under the law applicable at the time of the shooting, a killing which was "willful, deliberate and premeditated" constituted murder in the first degree. Act of June 24, 1939, P.L. 872, § 701, as amended, 18 P. S. § 4701 (repealed June 6, 1973). Those requirements have been met here. The evidence introduced at trial established that some days prior to the shooting, Segers observed Margaret Lane, his common-law wife, entering the automobile of Leonard Wilcox, the victim. An argu-

ment ensued and Segers stated that he did not want to see his wife in Wilcox's automobile again. And on the night of the shooting, as recounted above, Segers followed the automobile in which Wilcox and Lane were passengers for a number of blocks in Philadelphia. When finally he was able to pull alongside that car, Segers aimed a shotgun out of his car window at the car in which the others were riding, yelled "You all can't come back to Jersey no more" and fired, killing Wilcox. Alighting from his automobile, appellant boasted "I told you I was going to get you." The evidence offered by the Commonwealth, which included Segers' own voluntary confession, was more than sufficient for the jury to conclude that the shooting was not accidental, but premeditated and done with a specific intent to kill. *Commonwealth v. Hornberger,* 441 Pa. 57, 61–62, 270 A.2d 195, 197 (1970).[3]

Judgment of sentence affirmed.

**3.** Appellant has also alleged that the lower court erred in failing to suppress his confession because it was purportedly obtained in violation of Rule 118, Pa.R.Cr.P. (now Rule 130) and the decision of this Court in *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972) and its progeny. We need not, however, reach the merits of appellant's claim that the confession was the product of an unnecessary delay between his arrest and preliminary arraignment. At the suppression hearing, defendant's theory for moving to suppress the confession was that it was involuntarily obtained. No mention of any alleged unnecessary delay was made either then or at trial. It was not until his post-trial motions that the defendant raised this issue. Since the suppression hearing was held approximately seven months after our decision in *Futch,* we must hold that this alleged error has been waived. *Commonwealth v. Johnson,* 457 Pa. 554, 327 A.2d 632 (1974); *Commonwealth v. Reed,* 458 Pa. 8, 326 A.2d 356 (1974). *See also, Commonwealth v. Agie,* 449 Pa. 187, 296 A.2d 741 (1972).

On oral argument before this Court counsel for the appellant also contended that the confession had been involuntarily obtained and was thus improperly admitted into evidence. The issue of voluntariness, like the *Futch* issue, has not been properly preserved for appeal because as a matter of deliberate trial strategy, the appellant did not raise the voluntariness issue at trial. *Commonwealth v. Parks,* 453 Pa. 296, 301, 309 A.2d 725 (1973), cert. denied, 414 U.S. 1074, 94 S.Ct. 589, 38 L.Ed.2d 481 (1973). In fact, in his closing address to the jury, defense counsel read the appellant's statement in full to the jury