334 A.2d 603
COMMONWEALTH of Pennsylvania,
Appellee,

v.

Donald BRYANT, Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 14, 1974.

Decided March 18, 1975.

4

6

Louis M. Natali, Jr., Philadelphia, for appellant.

Arlen Specter, Dist. Atty., Richard A. Sprague, First Asst. Dist. Atty., David Richman, Asst. Dist. Atty.,

Chief, Appeals Div., Melvin Dildine, Asst. Dist. Atty., Philadelphia, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## ORDER

PER CURIAM.

The Court being equally divided the judgments are affirmed.

EAGEN, J., filed an opinion in support of affirmance in which O'BRIEN, J., joins.

POMEROY, J., filed an opinion in support of affirmance.

ROBERTS, J., filed an opinion in support of reversal in which NIX, J., joins.

MANDERINO, J., dissents.

JONES, C. J., did not participate in the consideration or decision of this case.

## OPINION IN SUPPORT
## OF REVERSAL

ROBERTS, Justice.

Appellant's statements were obtained during a period of unnecessary delay between arrest and arraignment in violation of Pa.R.Crim.P. 130.[1]  Under our decision in *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), and its progeny, it was error to admit those statements at trial.  I would therefore reverse the conviction.

1.  Rule 130 was numbered rule 118 at the time of appellant's trial.

Appellant was arrested at 5:00 p. m. on May 7, 1970, on a burglary charge unrelated to this murder prosecution. The police realized that appellant might be a suspect in the homicide and therefore transferred him to the homicide division where he arrived at 5:45. He was then questioned for one-half hour, and subjected to a polygraph test which lasted over an hour and a half. Finally, at 8:40 p. m., almost four hours after his arrest and three hours after his arrival at the homicide division, he admitted complicity in the murder. Interrogation continued until 9:25 p. m. during which appellant gave further details about the crime. Questioning resumed at 11:45 p. m. and continued until 12:15 a. m. During this phase of the interrogation appellant revealed still more details. At 1:20 a. m. appellant dictated a formal statement. Appellant was finally arraigned at 11:00 a. m. May 8, 1970.

The Commonwealth contends that the oral statements and the formal confession were admissible. It reaches this result by concluding that the first statement was not the product of unnecessary delay and then concluding that under our decision in *Commonwealth v. Rowe*, 459 Pa. 163, 327 A.2d 358 (1974), the subsequent statements were "merely" reiterations of the initial statement and therefore, not "reasonably related" to delay. The Commonwealth's analysis is fallacious.

In *Futch*, we held that all evidence prejudicial to the defendant obtained during an unnecessary delay in arraigning the defendant is inadmissible at trial unless it has no reasonable relation to the delay whatsoever. Our cases clearly hold that delay solely for the purpose of obtaining incriminating statements is always unnecessary. *Commonwealth v. Johnson*, 459 Pa. 171, 172, 327 A.2d 618, 619 (1974); *Commonwealth v. Cherry*, 457 Pa. 201, 204, 321 A.2d 611, 612–13 (1974); *Commonwealth v. Williams*, 455 Pa. 569, 573–74, 319 A.2d 419, 421 (1974); *Commonwealth v. Dixon*, 454 Pa. 444, 446–47, 311 A.2d

613, 614–15 (1973) ; *Commonwealth v. Tingle*, 451 Pa. 241, 244–46, 301 A.2d 701, 703–04 (1973). In this case, only the 45 minutes required to transport appellant to the homicide division can be attributed to any purpose other than the extraction of an incriminating statement. The bulk of the remaining three hours was spent interrogating appellant and administering the polygraph tests.

Clearly, under our precedents this delay was "unnecessary." Because appellant's initial statement was in response to the interrogation and the polygraph test, it must be concluded that it bore the required nexus to the unnecessary delay. Even if it were assumed that the subsequent statements were products of the initial statement, they too would be inadmissible as derivative products of "unnecessary delay."

However, the subsequent statements were not, in fact, products of the initial admission. In *Rowe,* supra, we held that where a defendant reveals "all the relevant" details of his crime in an initial confession, subsequent statements which merely reiterate the same facts are products of the initial statement, not of the delay between the two statements. 459 Pa. at 169, 327 A.2d at 361–62.

In the present case, appellant's initial statement merely admitted complicity. After this admission, the police interrogated appellant for an additional 45 minutes during which further information was elicited. Later that evening, the police questioned appellant for thirty minutes more and it was only at the completion of this session, more than seven hours after appellant's arrest,[2] that the police were satisfied that they had enough facts to warrant the taking of a formal statement. Clearly, the admissions made during the interrogations subse-

2. During the period between the interrogation session ending at 9:25 p. m. and the one beginning at 11:45 p. m., appellant was taken to a hospital for the treatment of an injury sustained prior to his arrest. Transportation to and from the hospital and treatment required no more than one hour and thirty-three minutes.

quent to the original admission contained additional "relevant details" and, therefore, cannot under *Rowe* be viewed as products of that admission. It follows that if the formal statement, the culmination of the evening's interrogation, was the product of any of the previous statements, it was the product of the final one, taken almost seven hours after arrest.

I would reverse the judgment of sentence and remand for a new trial.

NIX, J., joins in this opinion.

## OPINION IN SUPPORT
## OF AFFIRMANCE

EAGEN, Justice.

On June 9, 1972, the appellant, Donald Bryant, was convicted by a jury of burglary, aggravated robbery and murder in the first degree. On the murder conviction, the jury fixed the punishment at death. Post trial motions were subsequently denied by a court en banc. The sentence of death fixed by the jury was then "set aside", and a sentence of life imprisonment was imposed on the murder conviction. Additional prison sentences were imposed on the burglary and robbery convictions, and it was directed that these particular sentences be served concurrently with each other, but consecutively with the life imprisonment sentence imposed. This one appeal was filed in this Court.[1]

The sufficiency of the evidence to warrant the jury's verdict is not in issue, nevertheless, we have examined the record and find ample evidence therein to sustain the convictions. Suffice to say, the trial evidence established that on May 6, 1970, Bryant and three other young men

1. As to appellate jurisdiction, see the Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1), (Supp.1974–1975), and art. V, § 503(a), 17 P.S. § 211.503(a) (Supp.1974–1975).

brutally and repeatedly assaulted one Isadore Selez with blunt instruments in the course of perpetrating a robbery at the victim's junkshop in Philadelphia. As a result of the blows, Selez's skull was crushed like an egg and he died instantly.

The primary assignment of error involves the use at trial of evidence of an oral incriminating statement and a subsequent recorded incriminating statement made by Bryant to the police. Initially, it is maintained this evidence should have been suppressed [2] because it was the product of an unnecessary delay between arrest and arraignment. See Rule 118 (now 130) of the Pennsylvania Rules of Criminal Procedure. See also *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972). The pertinent facts disclosed by the record are these.

■ Bryant and others were taken into police custody about 5:00 p. m. on May 7, 1970, on an unrelated burglary charge. Because Bryant and his companions fit the descriptions given the police of those suspected of having committed the Selez robbery and killing, they were transferred to Homicide Headquarters about 5:45 p. m. for questioning about these crimes. Upon arrival Bryant was immediately advised of his constitutional rights as mandated by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and was told he was suspected of having participated in the Selez robbery and killing. During a period of questioning lasting about one-half hour or until 6:20 p. m., Bryant denied any knowledge of, or involvement in, these crimes. He was then left alone until about 7:05 p. m., when he was requested to take a polygraph examination. He consented and such a test proceeded. When it was completed about 8:40 p. m., Bryant was told the test demonstrated he was lying. Bryant then changed his story and admitted he was involved in the Selez crimes. He was then ques-

---

**2.** A pretrial motion to suppress this evidence was denied after a evidentiary hearing.

tioned further until 9:25 p. m., during which period he detailed the robbery, the killing and his participation. From 9:25 p. m. until 11:45 p. m., Bryant rested and received medical treatment for an ankle complaint. From 11:45 p. m. until 12:15 a. m. on May 8th, he was questioned again and supplied additional facts. After a further period of rest lasting until 1:20 a. m., the police repeated the "Miranda" warnings and began the recording of a formal statement.[3]

■ Accepting there was an "unnecessary delay" between his arrest and arraignment, Rule 118 (now 130), Pa.R.Crim.P., did not require the suppression of the evidence of Bryant's self-incriminations, because this evidence had no reasonable relationship to the delay. Cf. *Commonwealth v. Rowe*, 459 Pa. 163, 327 A.2d 358 (1974). In order for this evidence to be excluded because of the delay, the accused must show prejudice resulting from the delay, i. e., "a nexus between the delay and the challenged evidence . . . ." *Commonwealth v. Tingle*, 451 Pa. 241, 245, 301 A.2d 701, 703 (1973). Herein this nexus is missing.

■■ Bryant's first self-incrimination occurred just less than three hours after his arrival at Homicide Headquarters. Aside from the questions submitted as part of the polygraph examination, the questioning during these three hours was limited to one-half hour. The subsequent formal statement was merely a reiteration of what Bryant had already admitted. Under these circum-

3. Bryant was not arraigned until 11:30 a. m. on May 8th. However, the record indicates that during the time period between the completion of the formal statement and the arraignment, Bryant rested, ate and was allowed to speak with his parents. No prejudicial information was gathered. Consequently, although he should have been arraigned, no prejudice arose during this time. See *United States v. Mitchell*, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944), wherein the Supreme Court of the United States said that delay after the confession does not retroactively affect the validity of the confession. See also *Commonwealth v. Rowe*, 459 Pa. 163, 327 A.2d 358 (1974).

stances, the incriminating statements were not "reasonably related" to the delay in arraignment. See and compare, *Commonwealth v. Rowe,* supra.

Bryant also argues his self-incriminations were the product of coercion, and, therefore, involuntary. He asserts two alternate grounds to substantiate his allegation.

[■ First Bryant points to the fact that when he was taken into police custody he was suffering from an injury to his ankle. He says because of the alleged pain from the injury, his confession was not the product of a free will. The salient facts are as follows: When Bryant was initially interrogated he informed the police officer his ankle was injured. No action was taken by the officer, apparently because he did not believe the injury was in any way serious. About three hours later, Bryant again complained about his ankle and the investigating officer immediately sent him to the police surgeon who was on duty at police headquarters. The surgeon examined him and found the injury to be minor, and not of the nature requiring treatment. When Bryant was returned to Homicide Headquarters, he again complained of the injury and the officer, as a precautionary measure, sent him to Jefferson Hospital for a complete examination and X-rays. The doctors at the hospital determined Bryant had a minor injury or bruise and treated it accordingly.[4]

Bryant argues the instant case is controlled by *Greenwald v. Wisconsin,* 390 U.S. 519, 88 S.Ct. 1152, 20 L.Ed. 2d 77 (1968); *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); and, *United States ex rel. Collins v. Maroney,* 287 F.Supp. 420 (E.D.Pa.1968). We are not persuaded the instant facts fit within the mandate of these cases, rather the disposition of this case is controlled by this Court's recent decision in *Common-*

4. We specifically note no medication was given to Bryant which would affect his alertness or his ability to comprehend.

*wealth v. Swint,* 450 Pa. 54, 296 A.2d 777 (1972). In *Swint,* the defendant was suffering from minor lacerations of the temple area. We ruled that such minor wounds would not affect Swint's ability to freely and voluntarily make a confession. We believe the instant facts are directly on point with those presented in *Swint,* and that his self-incriminations were secured under constitutionally permitted circumstances.

Alternatively, Bryant argues his self-incriminations were involuntary because he was allegedly under the influence of alcohol at the time. He cites *Commonwealth v. Holton,* 432 Pa. 11, 247 A.2d 228 (1968), in support of this position. In *Holton,* we held a man who was intoxicated or suffering from the effects of the consumption of alcohol could not give a statement which was the product of a rational intellect and a free will. In *Holton,* the facts clearly indicated the defendant was under the influence of alcohol. Instantly, however, the investigating officers stated Bryant was coherent and alert during the interrogation and not under the influence of alcohol or drugs. Bryant, on the other hand, testified he had consumed some wine earlier in the day (approximately five to eight hours earlier) and was dizzy. This was a matter of credibility for the suppression hearing court and the trial jury, and there is absolutely nothing on the record before us which would indicate their decision against Bryant on this point was incorrect or unfounded. Hence, their findings may not be disturbed. *Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33 (1972).

Bryant next argues he was denied his right to an impartial jury. He says the jury was not chosen in compliance with the mandate set forth in *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). On previous occasions, we have confronted this exact issue and rejected it. For example, see *Commonwealth v.*

*Bighum,* 452 Pa. 554, 307 A.2d 255 (1973), and *Commonwealth v. Raymond,* 451 Pa. 500, 304 A.2d 146 (1973).

Bryant urges reversible error was committed when the trial judge admitted certain demonstrative evidence, specifically, the murder weapons, four black and white photographs and the clothing worn by appellant.

Initially, we recognize the admission of demonstrative evidence is largely within the discretion of the trial judge. See *Commonwealth v. Mitchell,* 445 Pa. 461, 285 A.2d 93 (1971); *Commonwealth v. Robinson,* 433 Pa. 88, 249 A.2d 536 (1969); *Commonwealth v. Wilson,* 431 Pa. 21, 244 A.2d 734 (1968); *Commonwealth v. Powell,* 428 Pa. 275, 241 A.2d 119 (1968); *Commonwealth v. Dickerson,* 406 Pa. 102, 176 A.2d 421 (1962). Secondly, the fact that the evidence is gruesome is not sufficient legal reason in and of itself to exclude the evidence. *Cf. Commonwealth v. Chasten,* 443 Pa. 29, 275 A.2d 305 (1971); *Commonwealth v. Capps,* 382 Pa. 72, 114 A.2d 338 (1955). Although gruesome, such evidence may still be admitted if it is relevant. Under such circumstances, the proper test to be applied by the trial judge is to determine whether or not the evidence is of such evidentiary value that the need therefor clearly outweighs the likelihood of inflaming the minds and passions of the jurors. *Commonwealth v. Powell,* supra.

Instantly, we find no abuse of discretion. The introduction of the murder weapons was relevant since the Commonwealth tried its case under a dual theory, i. e., felony-murder, and an intentional, premeditated, deliberate killing. As to the photographs, they were in black and white and depicted the murder scene. None of the photographs showed the body of the deceased. Lastly, the clothing was relevant to establish appellant participated in the crime. Moreover, none of the items were sent out with the jury, and they were only viewed by the jurors in the court room for a short period of time.

Bryant also maintains he was denied a speedy trial in violation of the Sixth Amendment. We specifically note that this contention was not asserted in the trial court until post trial motions. No attempt was made to bring this allegation to the attention of the trial court prior to, or during the trial. Even assuming the issue is properly before us, viewing the issue on its merits, we do not view the delay involved as constituting a violation of the accused's rights. Applying the standards set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Commonwealth v. Jones*, 450 Pa. 442, 299 A.2d 288 (1973); and, *Commonwealth v. Hamilton*, 449 Pa. 297, 297 A.2d 127 (1972), we find no error.

Lastly, Bryant alleges certain prejudicial errors were committed by the trial judge in his charge to the jury. We have reviewed the record and find no specific objection was taken to the alleged mistakes in the charge, nor was there a request for additional instructions. Under these circumstances, we will not review the alleged errors. *Commonwealth v. Carr*, 459 Pa. 262, 328 A.2d 512 (1974); *Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242 (1974). See also *Commonwealth v. Clair*, —— Pa. ——, 326 A.2d 272 (1974).

O'BRIEN, J., joins in this opinion.

JONES, C. J., did not participate in the consideration or decision of this case.

OPINION IN SUPPORT
OF AFFIRMANCE

POMEROY, Justice.

In my opinion, the issue of unnecessary delay has been waived by appellant's failure to raise it at trial. Appellant's trial commenced on June 1, 1972, which was over a month after the announcement of the exclusionary rule in *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417

(1972). The claim of error in not excluding the confessions was not made to the trial judge, but raised for the first time on post-trial motions. As we have recently reiterated several times, this was untimely. *Commonwealth v. Segers*, 460 Pa. 149, 331 A.2d 462 (1975); *Commonwealth v. Johnson*, 457 Pa. 554, 327 A.2d 632 (1974); *Commonwealth v. Reed*, 458 Pa. 8, 326 A.2d 356 (1974).