344 A.2d 487
COMMONWEALTH of Pennsylvania
v.
Reginald CULMER, Appellant.

Supreme Court of Pennsylvania.

Argued Dec. 2, 1974.

Decided Oct. 3, 1975.

———◆———

Louis G. F. Retacco, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Richard A. Sprague, 1st Asst. Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Glenn S. Gitomer, Carolyn Engel Temin, Asst. Dist. Attys., Abraham J. Gafni, Deputy Dist. Atty. for Law, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

Appellant was arrested and indicted for the killing of one, Methuselah Abolition. After a trial before a judge sitting without a jury appellant was adjudicated guilty of murder of the second degree and of a violation of the Uniform Firearms Act, 1972, Dec. 6, P.L. 1482, No. 334, § 1 et seq., 18 C.P.S.A. 6101 et seq. Post trial motions were filed, argued and dismissed and sentence was imposed. This direct appeal follows.[1]

██ We will first address appellant's contention that the evidence was not sufficient to sustain the verdict of murder of the second degree. Appellant contends that the testimony established a killing in hot blood and therefore a finding of voluntary manslaughter should have been returned.

Reviewing the testimony in a light most favorable to the verdict winner we are satisfied that this assignment

---

1. Jurisdiction for this appeal is pursuant to Appellate Court Jurisdiction Act, 1970, July 31, P.L. 673, No. 223, art. II, § 202(1), 17 P.S. 211.202(1).

of error is without merit. The Commonwealth's testimony established that on April 14, 1973 in Father Divine's Mission cafeteria in Philadelphia, Methuselah Abolition, a caretaker in the mission, woke the appellant who was sleeping at one of the tables and asked him to leave. Appellant became quarrelsome and began to fight with Abolition, who was seventy-one years old and whose right arm had been amputated at the shoulder. Appellant struck Abolition with his fists until he was restrained by Calvin Alford, a patron of the cafeteria. Appellant broke from Alford's restraint and began backing towards the front door of the cafeteria as Abolition followed him carrying a stick at his side telling appellant to leave. When Abolition was six to eight feet from the appellant, appellant pulled a gun out of his pocket and fired at Abolition. Wounded in the leg, Abolition fell to the floor. Seconds later, appellant fired again this time into Abolition's stomach. Abolition died as a result of these gunshot wounds.

As has been often stated the distinguishing feature of murder is the presence of malice. *Commonwealth v. Boyd,* 461 Pa. 17, 334 A.2d 610 (1975).

"In order to sustain a conviction of murder the element of malice must be established beyond a reasonable doubt. We have held that '[l]egal malice exists not only where there is a particular ill will, but also whenever there is a wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty. It may be found from the attending circumstances, and, like the specific intent to kill, may be inferred from the intentional use, without legal excuse or justification, of a deadly weapon on a vital part of another human being.' *Commonwealth v. Hornberger,* 441 Pa. 57, 61, 270 A.2d 195, 197 (1970). *See Commonwealth v. McFadden,* 448 Pa. 277, 292 A.2d 324 (1972); *Commonwealth v. Bowden,* 442 Pa. 365, 276 A.2d 530

(1971); *Commonwealth v. Commander*, 436 Pa. 532, 260 A.2d 773 (1971); *Commonwealth v. Lawrence*, 428 Pa. 188, 236 A.2d 768 (1968)." *Commonwealth v. Oates*, 448 Pa. 486, 490–491, 295 A.2d 337, 339 (1972). See also *Commonwealth v. Paquette*, 451 Pa. 250, 301 A. 2d 837 (1973).

 It is clear that the facts of this case would permit a trier of fact to find the presence of malice beyond a reasonable doubt. Appellant, nevertheless urges that our decision in *Commonwealth v. Rife*, 454 Pa. 506, 312 A.2d 406 (1973) is controlling here. We do not agree. The obvious distinction between the *Rife* decision and the instant appeal is that in *Rife* the trier of fact apparently found that the accused acted in a heat of passion. In the instant cause, although the fact finder could have accepted a version of the facts consistent with a manslaughter verdict, in fact he did not.

On appellate review of a criminal conviction we will not weigh the evidence and thereby substitute our judgment for that of the finder of fact. *Commonwealth v. Woodhouse*, 401 Pa. 242, 261, 164 A.2d 98 (1960). To do so would require an assessment of the credibility of the testimony and that is clearly not our function. *Commonwealth v. Sullivan*, 436 Pa. 450, 456, 263 A.2d 734 (1970), cert. denied, 400 U.S. 882, 91 S.Ct. 127, 27 L.Ed.2d 120; *Commonwealth v. Schuck*, 401 Pa. 222, 228, 164 A.2d 13 (1960), cert. denied, 368 U.S. 884, 82 S.Ct. 138, 7 L.Ed.2d 188 (1961). *Commonwealth v. Paquette, supra,* 451 Pa. at 257, 301 A.2d at 841.

In the present posture the only question presented is whether as a matter of law the finder of fact was required under this record to return a verdict of voluntary manslaughter. We think not.

 Appellant next asserts that it was error not to suppress the confession which they contend was the

product of an unreasonable delay between the arrest and the arraignment. *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972). Unfortunately, for appellant's position he failed to raise this claim either at the post-*Futch* suppression hearing which was held in this matter or at trial when the evidence was introduced. Under these circumstances this claim has not been preserved for review at this time. *Commonwealth v. Tucker,* 461 Pa. 191, 335 A.2d 704 (1975); *Commonwealth v. Bryant,* 461 Pa. 3, 334 A.2d 603 (1975); *Commonwealth v. Segers,* 460 Pa. 149, 331 A.2d 462 (1975); *Commonwealth v. Johnson,* 457 Pa. 554, 327 A.2d 632 (1975); *Commonwealth v. Reed,* 458 Pa. 8, 326 A.2d 356 (1974).

The appellant also challenges the legality of his arrest asserting that there was an absence of probable cause. He contends that the confession which he states was a product of the illegal arrest was therefore improperly admitted. We do not agree.

The pertinent facts surrounding the arrest are as follows. On May 8, 1973, at about 9:00 p. m., Officer Flaherty was approached by a known police informer and advised that the person they were seeking in connection with the shooting of the deceased was Reginald Culmer. After supplying the officer with the precise address of appellant the informer advised him that he (the informer) has just seen Culmer in the Odd Nine Bar wearing a trench coat, brown plaid pants and a dark "jeff cap". He further stated that appellant frequented a store at 13th and Bainbridge Streets in Philadelphia.

The officer then proceeded to the areas mentioned, and finally about 10:00 p. m., observed a man answering the description going into the store at 13th and Bainbridge. After a careful view of the suspect while he was in the store the officer consulted a wanted poster containing a description of Culmer. After being satisfied that the suspect he had been directed to fully met the description of the person described in the wanted poster, the officer

approached Culmer as he exited from the store. Armed with this information appellant was arrested and taken to police headquarters.

■■ The legality of an arrest without a warrant must depend upon the presence of probable cause. *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Commonwealth v. Bishop,* 425 Pa. 175, 228 A.2d 661 (1967). Probable cause exists if the facts and circumstances which are within the knowledge of the officer at the time of arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. *Commonwealth v. Garvin,* 448 Pa. 258, 262, 293 A.2d 33, 35–36 (1972); *Commonwealth v. Bishop, supra.* See also, *Commonwealth v. Murray,* 437 Pa. 326, 263 A.2d 886 (1970); *Commonwealth v. Brayboy,* 431 Pa. 365, 246 A.2d 675 (1968).

■ We need not here be concerned with the reliability of the informer or the source of the informer's information since we are satisfied that the observations of the officer after his receipt of this information supplied the probable cause which justified the arrest. As a result of information from two eyewitnesses to the shooting a police wanted poster containing a detailed description and composite drawing was prepared. When approached by the informer and supplied with the information referred to heretofore, Officer Flaherty had the poster in his possession. Flaherty showed the composite drawing to the informer who confirmed that it was the individual to whom he had been referring. Thus at the time of the arrest the officer was armed with a detailed description supplied by two eyewitnesses, a composite drawing made from the description and under the direction of these witnesses, further confirmation by a police informant, and finally his own determination as to the silimarity be-

tween description, drawing and the suspect to whom he had been directed. Even where the realiability of informers has not been established we have found such information sufficient to support probable cause where the same information is received from independent sources. *Commonwealth v. Mamon,* 449 Pa. 249, 297 A.2d 471 (1972).

> "Given this situation, it makes no difference that neither of the sources alone would suffice for probable cause. When two *independent* informants both supply the same information about a particular crime to the police, each source tends inherently to bolster the reliability of the other. Although the information supplied by one questionable source may be insufficient, the probability is extremely small that a second independent source would supply identical information if it were not probably accurate. When faced with such a situation, the police undoubtedly have a reasonable basis for further investigation. As the Supreme Court pointed out in *Beck v. Ohio,* 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964), probable cause means only the *probability* and not a prima facie showing of criminal activity." Id. at 259, 297 A.2d at 476.

Here we are presented with even a stronger position because not only was there confirmation from independent sources but also the reliability of the two eyewitnesses, who later testified during the trial, was beyond question. Having determined that there was probable cause and that the arrest was not illegal, it necessarily follows that appellant's corollary argument that the confession was a product of an illegal arrest must also fail.

Judgment of sentence affirmed.

JONES, C. J., and EAGEN, J., concur in the result.

ROBERTS, J., took no part in the consideration or decision of this case.