344 A.2d 880
**COMMONWEALTH of Pennsylvania**
v.
**Ralph SPRIGGS, Appellant (two cases).**

Supreme Court of Pennsylvania.

Argued Oct. 7, 1974.

Decided Oct. 3, 1975.

Richard H. Martin, Baskin, Boreman, Wilner, Sachs, Gondelman & Craig, Pittsburgh, for appellant.

John J. Hickton, Dist. Atty., Robert L. Eberhardt, Asst. Dist. Atty., John M. Tighe, First Asst. Dist. Atty., Pittsburgh, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

Appellant, Ralph G. Spriggs, was tried before a judge and jury on charges of murder and armed robbery and was convicted of murder in second degree and armed robbery. After post-trial motions were denied by the court en banc, appellant was sentenced to undergo a term of imprisonment of 8 to 20 years on the murder conviction. Sentence on the armed robbery conviction was suspended. This direct appeal followed.[1]

The Commonwealth's evidence at trial adduced the following facts. On January 23, 1970, Walter Olen was shot and killed in a real estate office which he managed in Pittsburgh. Approximately five months later the police learned from an informant that appellant was in-

---

1. This Court accepted certification from the Superior Court of the appeal from the armed robbery conviction. The appeal from the murder conviction is before this Court pursuant to the Appellant Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1974–75).

volved in the crime. In July 1971, another informant told the police that appellant and one, Augustus Gray, were involved in the shooting. The police then found that Gray's fingerprints matched a partial thumb and palm print found at the scene. In order to question appellant, the police obtained an order to take custody of him at Rockview Correctional Institution where he was then incarcerated on another offense. Appellant was not questioned during the drive to Pittsburgh. Approximately 20 minutes after arriving at the Public Safety Building in Pittsburgh, appellant was told that he was a suspect in the January 23rd shooting and was advised of his constitutional rights. Approximately 35 minutes thereafter, appellant admitted his involvement in the crime. He stated that he had gone with Gray to the real estate office with the intent to rob it, and that both he and Gray carried guns. He asserted however that when the victim armed himself with a pistol, he (Spriggs) fled the scene and that he did not witness or participate in the shooting in any way. Approximately 3 hours later, appellant gave a taped statement setting forth substantially the same facts as in his earlier oral statement.

Appellant challenges the introduction into evidence of his confession. First he contends that the confession should have been suppressed as the product of an unnecessary delay between arrest and arraignment. However, appellant failed to raise this issue at the suppression hearing which occurred six months after the announcement of our decision in *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972). Additionally, appellant failed to raise this objection when the statement was introduced at trial. Although appellant raised the issue on post-trial motions, the failure to make a timely objection either pre-trial or at trial precludes our review of it here. *Commonwealth v. Tucker*, 461 Pa. 191, 335 A.2d 704 (1975); *Commonwealth v. Bryant*, 461 Pa. 3, 334 A.2d 603 (1975); *Commonwealth*

*v. Segers,* 460 Pa. 149, 331 A.2d 462 (1975); *Commonwealth v. Johnson,* 457 Pa. 554, 327 A.2d 632 (1975); *Commonwealth v. Reed,* 458 Pa. 8, 326 A.2d 356 (1974).

■■ Second, appellant claims that the confession should have been suppressed because the language used to apprise him of his constitutional rights did not adequately comply with the requirements set forth by the United States Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[2] *Miranda* mandates that an accused be informed that he has "the right to remain silent" and further that *"anything* said can and will be used against the individual in court". Here appellant was advised that:

> "Under the law you cannot be compelled to answer, and you have the right to refuse to answer questions asked of you while you are in custody. If you do answer questions, the answers given by you will be used against you in a trial in a court of law at some later date. Do you understand this?"

Appellant concedes that the language used need not be a verbatim recital of the language used in *Miranda.* However, he claims that the language must be at least as broad as that used in *Miranda,* citing *United States v. Vanterpool,* 394 F.2d 697 (2d Cir. 1968) and *Tucker v. United States,* 375 F.2d 363 (3d Cir. 1967). In *Commonwealth v. Scoggins,* 451 Pa. 472, 304 A.2d 102 (1973), involving language used to advise the accused that he had a right to an attorney, this Court stated:

> "Admitting the above language was not identical with that pertinently advised in *Miranda,* however, it is abundantly clear the instant complaint lacks substance. The operative question is not whether the police employed the identical language used in *Miranda,* but

2. Appellant does not challenge the warnings given with regard to his right to counsel.

whether the words employed were sufficient to convey to the appellant the understanding that he had the constitutional right . . ." *Id.* at 477, 304 A.2d at 105.

Thus we must determine whether the right to remain silent was adequately conveyed by the language used. In our view, the language used here adequately conveyed the right conferred. The fact that the warnings focused upon the interrogation process, i. e., "answering questions" as opposed to *"any* statements", does not create a significant difference between the language employed here and that approved in *Miranda.* Constitutional inquiry should be directed not at possible esoteric or semantic differences, but should be directed at the substance of the right. Compare *Commonwealth v. Davis,* 440 Pa. 123, 270 A.2d 199 (1970) and *Commonwealth v. Singleton,* 439 Pa. 185, 266 A.2d 753 (1970), wherein we found a substantive difference between the *Miranda* language and the language used in those cases which was "anything you say may be used *for* or against you." Moreover, there is little difference between the language used here ("you can't be compelled to answer and you have the right to refuse to answer") and the language used in *Tucker v. United States, supra* ("you don't have to say anything and you don't have to make any statement") which appellant cites with approval. Accordingly we find no merit in this contention.[3]

■ Appellant next argues that the trial judge erred in his presentation of the issues to the jury. Appellant claims that there was sufficient evidence to justify a finding of withdrawal or abandonment and that accordingly the jury should have received an instruction on the law regarding withdrawal. It is well settled that in

---

3. Appellant in his brief reasserted a claim that the confession was involuntary. A review of the record causes us to concur with the suppression court, the jury, and the court en banc in finding that the statements were made voluntarily.

order to find abandonment or withdrawal, the actor must abandon the scheme appreciably before the homicide occurs and the actor must communicate his intention to his fellow conspirators so that they also have an opportunity to abandon the scheme. See *Commonwealth v. Sampson,* 445 Pa. 558, 285 A.2d 480 (1971); *Commonwealth v. Doris,* 287 Pa. 547, 135 A. 313 (1926). Appellant contends that these elements were made out by his testimony that he did not hear the fatal shot and he was not reunited with his accomplice until 20 minutes after the robbery. Assuming this evidence would sustain a jury finding as to the first element, i. e., that the abandonment occur appreciably before the homicide; this record is devoid of any evidence of the second element, i. e., communication. Accordingly the trial judge correctly refused to charge on withdrawal.

██ In a corollary argument, appellant claims that the evidence justified a finding of withdrawal as a matter of law and therefore the jury should have been precluded from finding felony-murder. Again the absence of any evidence of communication precludes a finding of withdrawal from the robbery and ensuing murder and thus the jury was properly permitted to find felony-murder.

██ Finally, although appellant does not challenge the sufficiency of the evidence to sustain the verdict of murder in the second degree, he does challenge the sufficiency of the evidence with regard to the armed robbery conviction. However, it is apparent on this record that appellant failed to raise this issue in his post-trial motions. Compare *Commonwealth v. Terry,* 462 Pa. 607, 342 A.2d 92 (filed June, 1975). First, appellant did not set forth the issue in his written post-trial motions which were otherwise quite specific and not simply of the "boiler plate" variety. While this fact alone would not require a waiver where the written motions were filed

prior to our decision in *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975),[4] it is clear from the trial court's opinion that this issue was also not raised orally. In his opinion the judge comprehensively listed each issue raised on the post-trial motions. This issue was not among those listed. Accordingly it was not raised and is waived. *Commonwealth v. Bronaugh*, 459 Pa. 634, 331 A.2d 171 (1975); *Commonwalth v. Reid*, 458 Pa. 357, 326 A.2d 267 (1974); *Commonwealth v. Goodman*, 454 Pa. 358, 311 A.2d 652 (1973).

Judgment of sentence affirmed.

ROBERTS, J., filed a concurring opinion.

JONES, C. J., took no part in the consideration or decision of this case.

ROBERTS, Justice (concurring).

Although I join in the majority opinion, I find it necessary to note an anomaly created by our rule of criminal procedure regarding pretrial motions to suppress evidence.

Pretrial motions to suppress evidence are authorized by Pa.R.Crim.P. 323. Subsection (a) of that rule, however, appears to restrict the availability of such motions to those relating to "evidence alleged to have been obtained in violation of the defendant's constitutional rights." The exclusionary rule created in *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), is based on nonconstitutional law. Nevertheless, it is clear that *Futch* claims may be raised in pretrial motions to suppress. Cf. *Commonwealth v. Riley*, 462 Pa. 190, 340 A.2d 427 (1975). While this is surely preferable prac-

---

4. In *Commonweath v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975), we indicated that issues not set forth in written motions filed subsequent to the date of that decision should not be considered by the court below and will not be considered by this Court on appeal. *Id.* at n. 1, 331 A.2d at 214, n. 1.

tice, an accused should not be barred from raising a *Futch* claim for the first time at trial as long as a reader of Rule 323(a) might be led to believe that such motions are available only for constitutional claims.

As a result of the wording of the rule and the practice of hearing *Futch* claims at a suppression hearing, a situation has been created wherein suppression motions based upon alleged violations of constitutional rights must be raised before trial, but suppression motions based upon alleged violations of rights created by statute or rule may be presented either before or at trial.

Treating a motion to suppress evidence allegedly the product of a violation of constitutionally-created rights different from motions to suppress evidence alleged to be the product of a violation of rights created by statute, decision or rule is unjustifiable. In my view, Rule 323(a) should be amended to make clear that a motion pursuant to that rule is the proper procedure by which an accused may seek the suppression of evidence obtained in violation of any right whether created by constitution or otherwise.