Commonwealth, Appellant, *v.* Dreuitt.

Argued April 26, 1974. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Cliff Haines*, Assistant District Attorney, with him *Edward G. Rendell* and *David Richman*, Assistant Dis-

trict Attorneys, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellant.

*Jack M. Myers,* with him *Zack, Myers and Atkinson,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, July 1, 1974:

This appeal arises from an order granting appellee Andre Dreuitt's motion to suppress his confession in which he admitted complicity in a homicide. The Commonwealth has appealed that decision.

Pursuant to a valid arrest warrant, Andre Dreuitt was arrested in Baltimore, Maryland, at 5:40 a.m., on February 2, 1972, for his alleged role in the teenage-gang killing of fourteen-year-old Keith Sworn in Philadelphia. The arrest was apparently based on statements taken from two other co-conspirators, who alleged that Dreuitt and two other youths, who had also fled to Baltimore, were among the five youths involved in the killing. At approximately 2:30 p.m., on February 2, 1972, the Philadelphia police were informed that Dreuitt and his two companions would waive their rights to an extradition hearing before they were taken back to Philadelphia.[1] At 8:00 p.m., on February 2, two Philadelphia police detectives arrived in Baltimore and left with Dreuitt and his two companions. The group arrived back in Philadelphia, at police headquarters, at approximately 10:50 p.m. The three suspects were separated and Dreuitt was immediately placed in a detention room. At approximately 11:00 p.m., on February 2, Dreuitt was advised of his constitutional rights, which he waived. He was then read excerpts from the

---

[1] For proceedings in the case of one of Dreuitt's companions, see *Commonwealth v. Faulcon,* 450 Pa. 413, 301 A.2d 375 (1973).

two formal statements of the first two alleged co-conspirators to have been apprehended, the statements which had apparently led to his arrest. According to police testimony, Dreuitt was then asked if "he was willing to give his side of the story." He replied that he was willing to make a statement, and the police left Dreuitt alone and went off to question the other two men who were arrested with him. From approximately 11:15 p.m., on February 2 until 5:45 a.m., on February 3, Dreuitt remained handcuffed to a chair in the detention room, except for a brief period, when he was given a meal.

Questioning resumed at 5:45 a.m. At that time, after again being advised of his constitutional rights, Dreuitt made a formal confession. The statement was concluded at 8:30 a.m. He was finally arraigned on February 3, 1972, at 11:15 a.m., some twelve hours after he was initially taken back to Philadelphia.

On March 14, 1972, Dreuitt filed a motion to suppress his confession. After a hearing, that motion was denied on April 24, 1972. Four days prior to that hearing, we decided in *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972), that a confession that was the product of an unnecessary delay between arrest and arraignment (Rule 118█ of the Pennsylvania Rules of Criminal Procedure) should not be admitted into evidence. Thereafter, Dreuitt's counsel filed a petition for reconsideration of his motion to suppress. This motion was denied by the court on the grounds that *Futch* would not be applied retroactively to the cases of confessions made before the decision was announced. Immediately prior to Dreuitt's trial, on March 16, 1973, we decided *Commonwealth v. Tingle,* 451 Pa. 241, 301 A.2d 701 (1973), which applied the *Futch* rule to a confes-

sion made on June 27, 1971. A second petition for reconsideration of the motion to suppress was filed and, after a three-judge panel was convened, the confession was suppressed, with one member of the panel dissenting. The Commonwealth now appeals from that ruling.

In ordering the confession to be suppressed, the court reasoned that there was clearly an unnecessary delay between arrest and arraignment, in contravention of Rule 116█ (since this arrest was made with a warrant, Rule 116, not Rule 118, is the applicable rule). With the conclusion we would agree. However, in *Futch* and *Tingle, supra,* and *Commonwealth v. Williams,* 455 Pa. 569, 319 A.2d 419 (1974), the cases upon which Dreuitt and the suppression court relied, we consistently held that for a confession to be excluded by reason of a delay between arrest and arraignment, it is not enough that the delay be unnecessary. It must also be "reasonably related" to the confession. To hold otherwise, would make our *Futch* rule a simple prophylactic rule, which we did not intend.

The suppression court determined that the confession was a product of that unnecessary delay. We do not agree. At the suppression hearing, the police detective in charge of the investigation testified that the following occurred at 11:15 p.m., on February 2, as soon as questioning began: "It was at this time I believe I went over the two formal statements with the defendant outlining what each of the defendants said about his involvement in the killing, and I asked him if he was willing or wanted to give his side of the story, and he said 'Yes, that he was; that he would give a statement.'"

The suppression court, believing that the above-related testimony was referring to two formal statements made by the two individuals who were arrested with

Dreuitt in Baltimore, concluded that Dreuitt's statement to the officer did not necessarily mean that Dreuitt had decided to confess. In reaching this conclusion, the suppression court made clear that it did not believe the Commonwealth's statement that, although Dreuitt was ready to confess at 11:15 p.m., his confession was not taken until some six and one-half hours later because the police were busy questioning the other two men who were arrested with Dreuitt in Baltimore. As the suppression court seemed to ask rhetorically, in its opinion, "If Dreuitt had already been confronted with 'two formal statements' why would the police still need statements from the other two defendants?"

Our examination of the record indicates that, in reaching this conclusion, the suppression court was confused. The formal statements with which Dreuitt was confronted when he agreed to talk were not the statements of the two men who had been arrested with him in Baltimore. Rather, they were the statements of the two other co-conspirators who had been arrested in Philadelphia soon after the crime occurred. Thus, there was no reason not to believe the police claim that they stopped questioning Dreuitt after he agreed to talk in order to go on to question the other two co-conspirators who had also been returned from Baltimore. Moreover, the police officers involved in the interrogation of Dreuitt testified that he seemed alert during the questioning and never complained of being tired. Although Dreuitt testified at the suppression hearing, his testimony did not contradict this nor did Dreuitt rebut the testimony that he had been willing to make a full statement as soon as he had been confronted with the two formal statements which the police had obtained before his arrest. Cf. *Commonwealth v. Fogan,* 449 Pa. 552, 296 A.2d 755 (1972). Since the record makes it clear that it was this confrontation which produced Dreuitt's willingness to confess, and there was no unreason-

able delay before this confrontation, it was error to exclude the confession.

Dreuitt argues that the time it took to bring him from Baltimore to Philadelphia should be considered as part of the unreasonable delay between arrest and arraignment, apparently because this period preceded the time when Dreuitt was confronted with the formal statements of the two alleged co-conspirators who had been previously apprehended in Philadelphia. However, there is no indication that the process by which Dreuitt was returned to Philadelphia, after being arrested in Baltimore and waiving his right to contest extradition, was unreasonably delayed. Moreover, although there is no record of what transpired in Baltimore, Maryland law requires that a defendant be warned of his right to free counsel and of the charges against him—two of the same rights guaranteed by Rule 119■ of Pennsylvania Rules of Criminal Procedure for defendants arraigned in Pennsylvania, and Dreuitt signed a waiver indicating he had been so warned.[2] Consequently, we do not believe that the period it took to take Dreuitt from Baltimore to Philadelphia should be considered as part of the period of unnecessary delay between his arrest and arraignment. Since Dreuitt indicated a willingness to confess immediately after his arrival in Philadelphia, his confession should not have been suppressed as the product of the subsequent delay.

---

[2] The pertinent statute provides: "No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him shall have appointed to receive him unless he shall be first taken forthwith before a judge of a Court of record in this State, who shall inform of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure legal counsel. . . ." (Maryland Code Anno. Art. 41, §25.)

Order reversed and case remanded for further proceedings consistent herewith.

Mr. Chief Justice JONES concurs in the result.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

The three-judge suppression court that heard testimony and saw witnesses found as a fact that appellee's initial communication with the police did not indicate willingness to confess.█ This finding of fact is binding on us. *Commonwealth v. Agie,* 449 Pa. 187, 191, 296 A.2d 741, 742 (1972); *Commonwealth v. Neal,* 447 Pa. 452, 456, 290 A.2d 922, 924 (1972).

Nevertheless, the opinion announcing the judgment of the Court asserts that when Dreuitt indicated he would "give his side of the story," he actually meant that he would confess guilt. I find this interpretation, gleaned from a cold and stale record, unconvincing. And when such a questionable deduction is used to overturn a hearing court's finding of fact and justify an accused's isolation for six and one-half hours while handcuffed to a metal chair, I find it completely unacceptable.

I would affirm the order of the court of common pleas. I dissent.

Mr. Justice NIX and Mr. Justice MANDERINO join in this dissenting opinion.

---

DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I join in the dissenting opinion of Mr. Justice ROBERTS. I should like to additionally note, however, that the majority inaccurately concludes that the suppression court was "confused." The observation of the suppression court, pointed out in the majority opinion, does not indicate confusion. Their observation indicates one of the reasons why they did not accept as credible the testimony of the police officers.