405 A.2d 1293

**COMMONWEALTH of Pennsylvania**

v.

**Walter GARNETT, Jr., appellant.**

Superior Court of Pennsylvania.

Argued May 8, 1979.

Decided June 13, 1979.

Petition for Allowance of Appeal Denied Nov. 8, 1979.

R. Stuart Jenkins, Media, for appellant.

D. Michael Emuryan, Deputy District Attorney, Media, for Commonwealth, appellee.

Before HOFFMAN, EAGEN and HESS, JJ.*

PER CURIAM:

Appellant, Walter Garnett, Jr., appeals from the judgments of sentence imposed following his conviction by a jury in Delaware County of murder of the second degree, rape, involuntary deviate sexual intercourse and criminal conspiracy. We affirm.

Garnett first complains that confessions he made to the police, evidence of which the trial court refused to suppress and which was used against him at trial, were the product of an unnecessary delay between arrest and arraignment, citing *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972). The facts do not support this claim.

■ Garnett himself first contacted police to offer information he said he had withheld at the time of the crimes six months before. After several conversations with police,

* Chief Justice Michael J. Eagen of the Supreme Court of Pennsylvania and Judge Warren K. Hess of the Court of Common Pleas of Berks County, Pennsylvania, are sitting by designation.

Garnett requested they pick him up and take him to the station for a discussion. He was picked up at 8:30 a. m. and transported to the police station. On his arrival, he was informed he was not in custody and was free to leave, and he was given *Miranda* warnings. Between 9:00 and 9:30 a. m., he gave a statement implicating his father in the crimes. The police requested he submit to a polygraph examination in Philadelphia to which he agreed. On arrival in Philadelphia at noon and after *Miranda* warnings, Garnett took the polygraph examination, and, immediately after completion of the examination at 3:30 p. m., he admitted his own involvement. Only at that time did he become a suspect. He was placed under arrest and again given *Miranda* warnings, and he then gave a statement and signed a transcription. Garnett was returned to Chester and fed, and a confirmatory statement was taken after *Miranda* warnings. His arraignment took place at 7:30 or 8:30 p. m. that evening. Thus there was a delay of five hours at most between Garnett's arrest and arraignment. Under the circumstances, the statement could not have been a product of unnecessary delay because there was no unnecessary delay. *See Commonwealth v. Coley*, 466 Pa. 53, 351 A.2d 617 (1976) (Plurality Opinion).

 Garnett further claims his confessions were not voluntary and should therefore have been suppressed because he was in an agitated mental state and the police used trickery against him. The emotional state of a defendant is only one of several factors to be considered in determining the voluntariness of a confession. *Culombe v. Connecticut*, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A.2d 426 (1968). The tricks alleged to have been used could only have been aimed at eliciting a statement implicating Garnett's father, who was a suspect in the crime, not a confession by Garnett himself. Thus they had no tendency to produce a false or involuntary confession. *See Commonwealth v.*

*Walker*, 433 Pa. 124, 249 A.2d 283 (1969). Moreover, there was sufficient evidence to enable the suppression court to find, as it did, that there was no police trickery and the statements were voluntarily given.

Garnett also asserts the trial court committed reversible error in refusing his four proposed voir dire questions concerning racial prejudice. The scope of voir dire is within the discretion of a trial judge whose decision may only be reversed for palpable error. *Commonwealth v. McGrew*, 375 Pa. 518, 100 A.2d 467 (1953). The court itself voir dired the panel regarding whether they would be unable to render a verdict on the law and the evidence because the defendant was a black man.[1] That the court exercised proper precautions to insure a fair jury is demonstrated, inter alia, by its cautionary statement to the prospective jurors that no racial bias or prejudice should be allowed to influence their decision in the case and that any member of the panel who felt unable to render a verdict without racial prejudice should not be timid but indicate that inability. The trial judge saw no extraordinary circumstances in the case which might have led him to probe further into the area of racial prejudice, nor do we. Under the circumstances, the trial court's determination that defense counsel's proposed questions were cumulative was not error. *Compare Commonwealth v. Foster*, 221 Pa.Super 426, 293 A.2d 94 (1972) (complete denial of right to examine jurors to show racial prejudice an abuse of discretion).[2]

Judgment of sentence affirmed.

1. The victim was also black.

2. Appellant raises four additional claims: (1) refusal of the trial court to accept appellant's proposed voir dire questions designed to explore ability to understand and apply principles of law was error; (2) the hypothetical questions posed by the district attorney to a Commonwealth witness, a forensic pathologist, were without foundation and prejudicial; (3) refusal of the court to grant certain requested points for charge was error; and, (4) the verdict is contrary to the weight of the evidence and the law. We find these contentions to be devoid of merit.